**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **VITOL INTERNATIONAL SHIPPING PTE. LTD.** | § | **CIV. A. NO. 4:26-cv-2122 c/w** |
| | § | **CIV. A. NO. 4:26-cv-2150** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADMIRALTY** |
| | § | |
| **MVP TERMINALLING, LLC** | § | |
| | § | |
| **Defendant.** | § | |

**AMENDED ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM AND CROSS-CLAIM OF VITOL INTERNATIONAL SHIPPING PTE. LTD. TO FIRST AMENDED COMPLAINT**

Defendant, Vitol International Shipping Pte. Ltd. ("Vitol"), through undersigned counsel, files its amended answer, affirmative defenses and realleged counterclaim to the First Amended Complaint (Dkt 42) (the "Amended Complaint") of plaintiff, Valero Marketing & Supply Company ("Valero"), as well as its realleged cross-claim against defendant, MVP Terminalling, LLC ("MVP"), on information and belief as follows:

**PRELIMINARY AFFIRMATIVE DEFENSES**

Vitol asserts the following preliminary affirmative defenses. After responding to the individual allegations of the Amended Complaint, Vitol asserts additional affirmative defenses.

1. Vitol objects to the propriety of venue of the Amended Complaint in light of the arbitration provision in that certain tanker voyage charter party (ExxonMobil VOY2005) as modified by a Confirmed Recap dated March 8, 2024 (the "Voyage Charter") between Vitol and Valero for the M/T BANGLAR AGRAJATRA.

2. Vitol objects to the sufficiency of service of process of the Amended Complaint and Summons directed to Vitol for Valero's failure to comply with the Hague Service Convention.

3. Valero is not the real party in interest for all or a substantial portion of its alleged recoverable damages in violation of Fed. R. Civ. P. 17(a)(1).

4. Valero has failed to join Valero Peru SAC, or the insurers or underwriters of Valero and/or Valero Peru SAC who have paid any losses alleged by Valero, whether in accordance with the applicable policy or cover note, or through loan receipts or other transfer of funds to Valero, as required by Fed. R. Civ. P. 19.

5. Valero's claim against Vitol is barred by the statute of limitations set forth in § 3(6) of the Carriage of Goods by Sea Act (hereafter "COGSA"), Act Apr. 16, 1938, ch. 229, 49 Stat. 1207 as amended by Pub. L. 97-31, Aug. 6, 1981, 95 Stat. 166; See also 46 U.S.C. § 30701 note) which act was incorporated by reference into the Voyage Charter.

## ANSWER

AND NOW for answer to the individual allegations of the Amended Complaint, Vitol alleges and avers, on information and belief, as follows:

## I.
## JURISDICTION AND VENUE

1. The allegations of Paragraph 1 pertain to this Court's subject matter jurisdiction to which no response is required; however, should this Court require an answer, Vitol admits the allegations of Paragraph 1.

2. Vitol denies the allegations of Paragraph 2 for lack of knowledge or information sufficient to form a belief.

3. Vitol denies the allegations of Paragraph 3.

## II.
## PARTIES

4. Vitol denies the allegations of Paragraph 4 for lack of knowledge or information sufficient to form a belief.

5. Vitol admits that the cargo at issue emanated from MVP's terminal in Pasadena, Texas, and that MVP participated in transferring the cargo to the M/T BANGLAR AGRAJATRA ("BANGLAR AGRAJATRA"). Except as expressly admitted, Vitol denies the truth of the remaining allegations of Paragraph 5 for lack of knowledge or information sufficient to form a belief.

6. Vitol admits it maintains an office at the pleaded address in Singapore.

7. Vitol admits that Bangladesh Shipping Corporation ("BSC") maintains an address at the pleaded address in Chattogram, Bangladesh. Except as expressly admitted, Vitol denies the remaining allegations of Paragraph 7 for lack of knowledge or information sufficient to form a belief.

8. Vitol admits the pleaded IMO number of the BANGLAR AGRAJATRA, that the vessel was operated under the flag of the People's Republic of Bangladesh, and that the cargo at issue was loaded into that vessel. Except as expressly admitted, Vitol denies the remaining allegations of Paragraph 8 for lack of knowledge or information sufficient to form a belief.

## III.
## BACKGROUND

9. The allegations of Paragraph 9 do not pertain to Vitol, and therefore no response is required; however, if the Court requires an answer, Vitol denies the allegations of Paragraph 9 for lack of knowledge or information sufficient to form a belief.

10. Vitol admits that it and Valero executed that certain tanker Voyage Charter

(ExxonMobil VOY2005), as modified by a Confirmed Recap dated March 8, 2024, which being a written contract is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to Paragraph 10. Except as expressly admitted, Vitol denies the allegations of Paragraph 10.

11. Vitol admits that Valero issued one or more voyage orders to load cargoes at MVP on the BANGLAR AGRAJATRA in Pasadena, Texas for carriage and unloading at one or more ports in Peru for delivery to Valero Peru SAC. Except as expressly admitted, Vitol denies the allegations of Paragraph 11.

12. Vitol denies Paragraph 12 for lack of knowledge or information sufficient to form a belief.

13. Vitol denies Paragraph 13 for lack of knowledge or information sufficient to form a belief.

14. Vitol admits it executed a time charter party with BSC for the BANGLAR AGRAJATRA as amended and modified (hereafter the "Time Charter"), which being a written contract is the best evidence of its terms and conditions all of which are pleaded in response to Paragraph 14. Except as expressly admitted, Vitol denies the allegations of Paragraph 14.

15. Vitol denies Paragraph 15 for lack of knowledge or information sufficient to form a belief.

16. Vitol denies Paragraph 16 for lack of knowledge or information sufficient to form a belief.

17. To the extent Paragraph 17 pertains to Vitol, Vitol responds that the Voyage Charter and the Time Charter, being written contracts are the best evidence of their respective terms, conditions, and provisions, all of which are pleaded in response to Paragraph 17. To the extent

Paragraph 17 pertains to MVP or BSC, Vitol denies Paragraph 17 for lack of knowledge or information sufficient to form a belief. Except as expressly admitted or for which knowledge or information has been disclaimed, Vitol denies the allegations of Paragraph 17.

18. To the extent that Paragraph 18 pertains to Vitol, Vitol denies those allegations. To the extent Paragraph 18 pertains to MVP or BSC, Vitol denies Paragraph 18 for lack of knowledge or information sufficient to form a belief.

19. Vitol denies Paragraph 19.

20. Vitol admits that the BANGLAR AGRAJATRA departed MVP's dock on March 19, 2024. Except as expressly admitted, Vitol denies Paragraph 20.

## IV.
## FIRST CAUSE OF ACTION – BREACH OF CONTRACT AGAINST MVP

21. In response to Paragraph 21, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

22. The allegations of Paragraph 22 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 22 for lack of knowledge or information sufficient to form a belief.

23. The allegations of Paragraph 23 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 23 for lack of knowledge or information sufficient to form a belief.

24. The allegations of Paragraph 24 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 24 for lack of knowledge or information sufficient to form a belief.

## V.
## SECOND CAUSE OF ACTION – NEGLIGENCE AGAINST MVP

25. In response to Paragraph 25, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

26. The allegations of Paragraph 26 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 26 for lack of knowledge or information sufficient to form a belief.

27. The allegations of Paragraph 27 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 27 for lack of knowledge or information sufficient to form a belief.

28. The allegations of Paragraph 28 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 28 for lack of knowledge or information sufficient to form a belief.

29. The allegations of Paragraph 29 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 29 for lack of knowledge or information sufficient to form a belief.

## III.
## THIRD CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE AGAINST MVP

30. In response to Paragraph 30, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

31. The allegations of Paragraph 31 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 31 for lack of knowledge or information sufficient to form a belief.

32. The allegations of Paragraph 32 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 32 for lack of knowledge or information sufficient to form a belief.

33. The allegations of Paragraph 33 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 33 for lack of knowledge or information sufficient to form a belief.

## VII.
## FOURTH CAUSE OF ACTION – BREACH OF BAILMENT AGAINST MVP

34. In response to Paragraph 34, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

35. The allegations of Paragraph 35 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 35 for lack of knowledge or information sufficient to form a belief.

36. The allegations of Paragraph 36 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 36 for lack of knowledge or information sufficient to form a belief.

## VIII.
## FIFTH CAUSE OF ACTION – CONTRACTUAL INDEMNITY AGAINST MVP

37. In response to Paragraph 37, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

38. The allegations of Paragraph 38 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 38 for lack of knowledge or information sufficient to form a belief.

39. The allegations of Paragraph 39 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 39 for lack of knowledge or information sufficient to form a belief.

## IX.
## SIXTH CAUSE OF ACTION – NEGLIGENCE AGAINST THE VESSEL INTERESTS

40. In response to Paragraph 40, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

41. The allegations of Paragraph 41 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 41 for lack of knowledge or information sufficient to form a belief.

42. The allegations of Paragraph 42 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 42 for lack of knowledge or information sufficient to form a belief.

43. The allegations of Paragraph 43 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol responds that the Time Charter, being a written contract, is the best evidence of its respective terms, conditions, and provisions, all of which are pleaded in response to Paragraph 43. Vitol denies the remaining allegations of Paragraph 43 for lack of knowledge or information sufficient to form a belief.

44. The allegations of Paragraph 44 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 44 for lack of knowledge or information sufficient to form a belief.

45. The allegations of Paragraph 45 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 45 for lack of knowledge or information sufficient to form a belief.

46. The allegations of Paragraph 46 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 46 for lack of knowledge or information sufficient to form a belief.

47. The allegations of Paragraph 47 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 47 for lack of knowledge or information sufficient to form a belief.

## X.
## SEVENTH CAUSE OF ACTION – UNSEAWORTHINESS AGAINST THE VESSEL INTERESTS

48. In response to Paragraph 48, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

49. The allegations of Paragraph 49 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 49 for lack of knowledge or information sufficient to form a belief.

50. The allegations of Paragraph 50 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 50 for lack of knowledge or information sufficient to form a belief.

## XI.
## EIGHTH CAUSE OF ACTION – BREACH OF THE IMPLIED WARRANTY OF SEAWORTHINESS AGAINST THE VESSEL INTERESTS

51. In response to Paragraph 51, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

52. The allegations of Paragraph 52 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 52 for lack of knowledge or information sufficient to form a belief.

53. The allegations of Paragraph 53 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 53 for lack of knowledge or information sufficient to form a belief.

## XII.
## NINTH CAUSE OF ACTION – BREACH OF BAILMENT AGAINST THE VESSEL INTERESTS

54. In response to Paragraph 54, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

55. The allegations of Paragraph 55 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 55 for lack of knowledge or information sufficient to form a belief.

56. The allegations of Paragraph 56 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 56 for lack of knowledge or information sufficient to form a belief.

57. The allegations of Paragraph 57 do not pertain to Vitol and therefore no response is required; however, should this Court require an answer, Vitol responds that the Time Charter, being a written contract, is the best evidence of its respective terms, conditions, and provisions, all of which are pleaded in response to Paragraph 57. Vitol denies the remaining allegations of Paragraph 57 for lack of knowledge or information sufficient to form a belief.

58. The allegations of Paragraph 58 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 58 for lack of knowledge or information sufficient to form a belief.

59. The allegations of Paragraph 59 do not pertain to Vitol, and therefore no response is required; however, should this Court require an answer, Vitol denies the allegations of Paragraph 59 for lack of knowledge or information sufficient to form a belief.

**XIII.**
**TENTH CAUSE OF ACTION – BREACH OF CONTRACT AGAINST VITOL**

60. In response to Paragraph 60, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

61. Vitol admits that it and Valero executed the Voyage Charter, which being a written contract is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to Paragraph 61. Except as expressly admitted, Vitol denies the allegations of Paragraph 61.

62. Vitol admits that it and Valero executed the Voyage Charter, which being a written contract is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to Paragraph 62. Except as expressly admitted, Vitol denies the allegations of Paragraph 62.

63. Vitol admits that it and Valero executed the Voyage Charter, which being a written contract is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to Paragraph 63. Vitol also admits that Valero ordered Vitol to have the BANGLAR AGRAJATRA proceed to MVP's terminal where MVP would load various cargoes on the BANGLAR AGRAJATRA for delivery to one or more ports in Peru also as ordered by Valero. Except as expressly admitted, Vitol denies the allegations of Paragraph 63.

64. Vitol denies Paragraph 64.

## XIV.
## ELEVENTH CAUSE OF ACTION – NEGLIGENCE AGAINST VITOL

65. In response to Paragraph 65, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

66. To the extent the allegations of Paragraph 66 quote or otherwise refer to the Voyage Charter, the Voyage Charter is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to those portions of Paragraph 66. Vitol denies the remaining allegations of Paragraph 66.

67. To the extent the allegations of Paragraph 67 quote or otherwise refer to the Voyage Charter, the Voyage Charter is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to those portions of Paragraph 67. Vitol denies the remaining allegations of Paragraph 67.

68. Vitol denies Paragraph 68.

69. Vitol denies Paragraph 69.

## XV.
## TWELFTH CAUSE OF ACTION – BREACH OF EXPRESS WARRANTY AND IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE AGAINST VITOL

70. In response to Paragraph 70, Vitol realleges and reavers its responses to the individual allegations in this answer and each and every affirmative defense.

71. To the extent the allegations of Paragraph 71 quote or otherwise refer to the Voyage Charter, the Voyage Charter is the best evidence of its terms, conditions, and provisions, all of which are pleaded in response to those portions of Paragraph 71. Vitol denies the remaining allegations of Paragraph 71.

72. Vitol denies Paragraph 72.

73. Vitol denies Paragraph 73.

## XVI. FOR THE COURT'S EYES ONLY

74. The allegations of Paragraph 74 do not require a response on the part of Vitol; however, should this Court require an answer, Vitol realleges and reavers that Valero is not the sole real party in interest of the claims asserted by Valero and furthermore that Valero has failed to join one or more required parties.

75. To the extent this Court requires answer to any prefatory, introductory or unnumbered paragraph or to the Prayer of the Complaint, Vitol denies them.

## ADDITIONAL AFFIRMATIVE DEFENSES

6. Vitol pleads the terms, conditions, and provisions of the Voyage Charter as a complete defense or in diminution of the claims asserted by Valero against Vitol.

7. Vitol pleads the terms, conditions, and provisions of any bill of lading issued pursuant to the Voyage Charter as a complete defense or in diminution of the claims asserted by Valero against Vitol.

8. Any damage to Valero's cargoes was due to causes for which Vitol is not liable other responsible by virtue of COGSA and or applicable provisions of the General Maritime Law of the United States.

9. Any damage to Valero's cargoes was caused or contributed to by the negligence, default, or act of the master or the servants of BSC in the navigation or in the management of the BANGLAR AGRAJATRA, for none of which Vitol can be held liable.

10. Any damage to Valero's cargoes was caused or contributed to by the acts or omissions of Valero, its agents or representatives for none of which Vitol can be held liable.

11. Any damage to Valero's cargoes was caused or contributed to by the acts or omissions of independent contractors or other third persons for whose negligence or fault Vitol is not responsible.

12. Any damage to Valero's cargoes was caused or contributed to by the inherent defect, quality or vice of the goods for none of which Vitol can be held liable.

13. Any damage to Valero's cargoes was caused or contributed to by latent defects of the cargoes not discoverable by due diligence for none of which Vitol can be held liable.

14. Any damage to Valero's cargoes was caused or contributed to by other cause or causes arising without the actual fault and privity of Vitol or its agents or servants for none of which Vitol can be held liable.

15. Vitol exercised due diligence to render the BANGLAR AGRAJATRA, her master, crew and cargo tanks in all respects seaworthy prior to the vessel's departure from MVP's Pasadena terminal on March 19, 2024.

16. The damages claimed by Valero were caused or contributed to by Valero's breach of its duty to mitigate its damages.

17. If Valero is entitled to any recovery against Vitol, which is expressly denied, any such recovery must be computed in accordance with COGSA including the per package limitation.

18. Vitol reserves its right to assert additional defenses as discovery proceeds in this matter.

## COUNTERCLAIM AGAINST VALERO MARKETING AND SUPPLY COMPANY

AND NOW, assuming the status as counterclaimant, Vitol files the following repleaded counterclaim against Valero Marketing and Supply Company ("Valero"), pursuant to Fed. R. Civ. P. 13(a), on information and belief:

**JURISDICTION AND VENUE**

1. Vitol's counterclaim seeks the recovery and/or reimbursement of freight, expenses associated with Valero's change in destination, demurrage and other costs and expenses due and owing by Valero pursuant to that certain tanker voyage charter party (ExxonMobil VOY2005) as modified by a Confirmed Recap dated March 8, 2024 (the "Voyage Charter") for the M/T BANGLAR AGRAJATRA, a maritime contract over which this Court has subject matter jurisdiction pursuant to its admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and within the meaning of Fed. R. Civ. P. 9(h).

2. This Court is a proper venue for this counterclaim under 28 U.S.C. § 1391(b)(2) & (3).

**PARTIES**

3. Counterclaimant, Vitol, is a private limited corporation, organized pursuant to the laws of Singapore and was identified as the "Commercial Operator" and "Disponent Owner" in the Voyage Charter.

4. Counterdefendant, Valero, is a corporation organized under the laws of the State of Delaware, authorized to do and doing business within the State of Texas and the physical jurisdiction over this Court, and was identified as "Charterer" in the Voyage Charter.

**BREACH OF VOYAGE CHARTER BY VALERO**

5. Vitol adopts and incorporates by reference all terms, conditions and provisions of the Voyage Charter, a copy of which appears in the record as Dkt 1-1, if copied herein *in extenso*.

6. Valero issued an order to Vitol for the M/T BANGLAR AGRAJATRA ("BANGLAR AGRAJATRA") to sail to the Pasadena, Texas terminal of MVP Terminalling, LLC

("MVP"), to load certain cargoes designated by Valero, and to deliver those cargoes to one or more ports in Peru to be identified by Valero or its affiliate Valero Peru SAC, and to be ordered by Valero.

7. MVP transferred Valero's designated cargoes to the BANGLAR AGRAJATRA from March 17 through 19, 2024.

8. Thereafter, Valero ordered Vitol to have the BANGLAR AGRAJATRA proceed to the Galveston Offshore Lightering Area to discharge cargoes of Ultra-Low Sulfur Diesel B 85 and fuel ethanol to the M/V STENA IMPULSE, which comprised the first change in destination by Valero under the Voyage Charter.

9. Subsequently, Valero ordered Vitol to have the BANGLAR AGRAJATRA proceed to the Buckeye Terminal in The Bahamas to discharge cargoes of G90 gasoline, G95 gasoline, and diesel, which comprised the second change in destination by Valero under the Voyage Charter.

10. Accordingly, the BANGLAR AGRAJATRA sailed to MVP's Terminal, received cargoes from MVP, sailed to the Galveston Offshore Lightering Area and delivered certain cargoes to the M/V STENA IMPULSE, thereafter sailed to The Bahamas and delivered certain cargoes to the Buckeye Terminal, at all times pursuant to the Voyage Charter and Valero's orders.

11. In connection with the foregoing activities and the Voyage Charter, Valero was obligated to pay Vitol the following: freight; expense, costs, and charges for Valero's changes of destination of the vessel; demurrage; and related and other charges presently believed to exceed $4.4 million.

12. Despite timely demands by Vitol, Valero has failed to pay said freight; expense, costs, and charges for the changes of destination; demurrage; and related and other charges presently believed to exceed $4.4 million, which amounts are due and owing.

13. Vitol is additionally entitled to recover from Valero interest on the outstanding invoices, either at the contractual rate or the federal rate, as well as the attorney's fees and costs incurred not only in the recovery of the foregoing amounts owed by Valero, but also in the defense of Valero's claims against Vitol, whether pursued in this civil action or in arbitration.

## CROSS-CLAIM AGAINST MVP TERMINALLING, LLC

AND NOW, assuming the status as cross-claimant, Vitol files the following repleaded cross-claim against MVP Terminalling, LLC ("MVP"), pursuant to Fed. R. Civ. P. 13(g), on information and belief:

## JURISDICTION AND VENUE

1. This cross- claim arises out of the contamination of various cargoes which MVP transferred from its terminal in Pasadena, Texas to the M/T BANGLAR AGRAJATRA ("BANGLAR AGRAJATRA"), over which this Court has subject matter jurisdiction pursuant to its admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and within the meaning of Fed. R. Civ. P. 9(h).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) & (3).

## PARTIES

5. Vitol f/k/a Mansel Pte. Ltd is a private limited corporation organized and existing under the laws of the Republic of Singapore.

6. MVP is a limited liability company organized under the laws of the State of Delaware, authorized to do and doing business in the State of Texas, and is presently a party to this proceeding.

## GENERAL ALLEGATIONS

7. On or about, December 1, 2023, Mansel Pte. Ltd. (now known as Vitol) entered

into a time charter party with Bangladesh Shipping Corporation ("BSC") for the hire of the BANGLAR AGRAJATRA.

8. On or about March 8, 2024, Vitol entered into a voyage charter party with Valero Marketing and Supply Company ("Valero") for carriage of certain Valero fuel cargoes aboard the BANGLAR AGRAJATRA, including jet fuel, gasoline 90, gasoline 95, and Ultra-Low Sulfur Diesel ("ULSD"), from MVP's Terminal to Callao, Peru.

9. Valero's fuel cargoes were stored at MVP's terminal in Pasadena, and loaded by MVP from its dock and delivered to the BANGLAR AGRAJATRA from March 17 through 19, 2024.

10. After loading, it was found that certain of the fuel cargoes loaded aboard the BANGLAR AGRAJATRA were contaminated, co-mingled, or otherwise not within the designated specifications. Ultimately, the contaminated and damaged fuel cargoes were offloaded and sold.

11. Vitol alleges and avers MVP's breach of contract, negligence, fault, failure to perform in a workmanlike manner, breach of bailment, and/or other acts or omissions with respect to MVP's storage and/or delivery of the fuel cargoes to the BANGLAR AGRAJATRA proximately caused or contributed to the contamination of the fuel cargoes and all resulting damages, for which damage MVP is liable in whole or in part.

12. None of the cargo contamination or resulting damages was proximately caused or contributed to by any negligence, fault, breach of contract, or other act or omission on the part of Vitol.

13. Despite the absence of negligence or fault on the part of Vitol, Valero has claimed that Vitol is potentially liable to Valero for the cargo contamination, which claim and allegations are denied by Vitol in their entirety and asserted affirmative defenses thereto. Vitol further avers

and maintains that it possesses rights, claims, denials, and defenses to any and all claims Valero has asserted or may asset in the future against Vitol relating to the contamination of the fuel cargoes, all of which those of which are presently known have been alleged and averred in Vitol's answer and affirmative defenses to Valero's Complaint, and all of which that are presently unknown are expressly reserved.

14. Any such dispute by and between Valero and Vitol is subject to mandatory arbitration in Houston, Texas, in accordance with the terms and provisions of the referenced voyage charter party.

15. Despite the absence of negligence or fault on the part of Vitol, BSC has claimed that Vitol is potentially liable to BSC for the cargo contamination, which claim and allegations are denied by Vitol in their entirety. Vitol further avers and maintains that it possesses rights, claims, denials, and defenses to any and all claims BSC has asserted or may assert in the future against Vitol relating to the contamination of the fuel cargoes, all of which are expressly reserved.

16. Any such dispute by and between BSC and Vitol is subject to either arbitration in London, England, or litigation in the High Court of Justice in England and Wales in accordance with the terms and provisions of the referenced time charter party.

17. The general maritime law of the United States provides the substantive law applicable to Vitol's claims against MVP.

**FIRST CAUSE OF ACTION FOR TORT-BASED INDEMNITY**

18. Vitol re-alleges and re-urges the allegations in paragraphs 7 through 17, as if copied *in extenso*, and re-asserts its lack of liability to Valero, BSC or any other person or business entity for the alleged contamination of the fuel cargoes and resulting damages.

19. Alternatively, should an arbitration panel or any Court conclude that Vitol is liable to Valero and/or BSC under the terms of the charter agreements or otherwise, which is expressly denied and for which all Vitol's denials and defenses are maintained, then Vitol is entitled to tort-based indemnity from MVP for all damages with which Vitol is cast in any arbitral award or final judgment arising from MVP's storage and/or delivery of the fuel cargoes at issue.

**SECOND CAUSE OF ACTION FOR ATTORNEY'S FEES AND COSTS**

20. Vitol re-alleges and re-urges the allegations in paragraphs 7 through 19, as if copied *in extenso*, and re-asserts its lack of liability to Valero, BSC or any other person or business entity for the alleged contamination of the fuel cargoes and resulting damages.

21. Because Vitol is entitled to recover tort-based indemnity from MVP, Vitol is also entitled to recover from MVP Vitol's reasonable and necessary attorney's fees and costs incurred in the defense of all such claims asserted against it related to the alleged contamination of the fuel cargoes and resulting damages.

**THIRD CAUSE OF ACTION FOR TORT-BASED CONTRIBUTION**

22. Vitol re-alleges and re-urges the allegations in paragraphs 7 through 17, as if copied *in extenso*, and re-asserts its lack of liability to Valero, BSC or any other person or business entity for the alleged contamination of the fuel cargoes and resulting damages.

23. In the further alternative, should an arbitration panel or any Court conclude that Vitol is liable to Valero and/or BSC or any other person or business entity under the terms of the charter agreements or otherwise, which is expressly denied and for which all Vitol's denials and defenses are maintained, then Vitol is entitled to recover contribution from MVP for any and all sums that Vitol is required to pay and has paid in excess of its proportional fault determined in any arbitral award or final judgment that may be entered against Vitol.

**PREJUDGMENT INTEREST**

24. Vitol is entitled to prejudgment interest at a rate to be determined by this Court beginning on March 17, 2024, and continuing through the date of this Court's judgment on all amounts which MVP owes Vitol under the circumstances.

WHEREFORE, Vitol International Shipping Pte. Ltd. prays that its answer to the Amended Complaint be deemed good and sufficient, and that after due delays are had, that this Court enter a judgment confirming any arbitral award in favor of Vitol and against Valero Marketing and Supply, including reasonable attorney's fees and costs, as well as all attorney's fees and costs incurred by Vitol in the defense of this suit and the prosecution of any arbitral proceeding against Valero, and that Valero's Amended Complaint against Vitol be dismissed, with prejudice, at Valero's costs;

ALTERNATIVELY, Vitol prays that its answer to the Amended Complaint be deemed good and sufficient, and that after due delays are had, that this Court enter a judgment dismissing Valero's Amended Complaint against Vitol, with prejudice, at Valero's costs;

FURTHERMORE, Vitol prays that its counterclaim against Valero be deemed good and sufficient, and that Valero be made to answer or respond to the counterclaim within the legal delays, and that after due proceedings are had, that this Court enter a judgment in favor of Vitol and against Valero, casting Valero liable for $4.4 million or such amounts as this Court deems appropriate, including reasonable attorney's fees and costs, as well as all attorney's fees and costs incurred by Vitol in the defense of this suit and the prosecution of any arbitral proceeding against Valero, at Valero's costs;

FURTHERMORE, Vitol prays that its cross-claim against MVP Terminalling, LLC be deemed good and sufficient, and that MVP be made to answer or respond to the cross-claim within

the legal delays, and that after due proceedings are had, that this Court enter a judgment in favor of Vitol and against MVP for tort-based indemnity including attorney's fees, or, alternatively, contribution, relating to any damages for which Vitol maybe found liable (the liability for which is expressly denied) in connection with the contamination of the fuel cargoes at issue, together with pre-judgment interest, post-judgment interest, and costs; and,

FURTHERMORE, that this Court award Vitol and all other just and equitable relief that is warranted and proven at trial.

New Orleans, Louisiana
November 18, 2026

Respectfully submitted,

**KING & JURGENS, L.L.C.**

*/s/ Michael J. Cerniglia*

JAMES D. BERCAW
Motion for admission *pro hac vice* to be filed
MICHAEL J. CERNIGLIA
Motion for admission *pro hac vice* to be filed
201 St. Charles Avenue, 45th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-1272
Facsimile: (504) 582-1233
jbercaw@kingjurgens.com
mcerniglia@kingjurgens.com

and

Michael S. Wright
Texas State Bar No. 22049900
6363 Woodway, Ste. 820
Houston, TX 77057
Tel: 713.334.5644
Fax: 713.715.4778
mwright@kingjurgens.com

*Attorneys for Plaintiff, Counterclaimant and Cross-claimant, Vitol International Shipping Pte. Ltd.*